**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

-v- 1:26-CR-260 (AJB)

MARION LOPATNIUK,

Defendant.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

## I. INTRODUCTION

The United States of America (the "Government") has obtained a one-count indictment that charges defendant Marion Lopatniuk ("defendant") with using interstate commerce facilities in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958(a). Dkt. No. 35.

On September 1, 2026, defendant gave notice pursuant to Federal Rule of Criminal Procedure 12.2(b) that he intends to introduce at trial expert testimony about his mental health and related medical conditions. Dkt. No. 40. In this notice, defendant "reserve[d] the right" to present testimony from clinical psychiatrist Stephen Price, M.D. ("Dr. Price") about defendant's "mental and related medical conditions" at the time of the alleged offense in support of his potential defense theory—that he was entrapped by the Government. *Id.*

On September 18, 2026, the Government moved *in limine* to preclude defendant from introducing this proposed evidence and testimony as barred by the Insanity Defense Reform Act of 1984 and the Federal Rules of Evidence. Dkt. No. 41. Alternatively, the Government moved for an evidentiary hearing pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to

determine the admissibility of defendant's proposed expert testimony. *Id.* In the event that the Court were to find the evidence admissible at trial after a *Daubert* hearing, the Government seeks an order directing defendant to submit to a mental examination by a Government expert. *Id.*

The motion has been fully briefed, Dkt. Nos. 42, 43, and the Court heard oral argument on November 3, 2026.

## II. BACKGROUND

On June 30, 2025, defendant was charged by criminal complaint with using interstate commerce facilities in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958(a). *See* Dkt. No. 1 ("Compl."). On August 12, 2026, a grand jury returned a one-count indictment charging defendant with the same offense. *See* Dkt. No. 35.

The Government alleges that defendant, while being held on state-court criminal charges at Rensselaer County Correctional Facility ("RCCF"), solicited other individuals to murder his ex-wife's boyfriend ("the victim"). Compl. ¶ 5. At the time, defendant and his ex-wife were engaged in a custody dispute. *Id.* According to the Government, defendant offered to pay $1,200 toward the murder and agreed to work off the remaining debt by committing additional crimes for the perpetrator's criminal organization upon his release from custody. *Id.*

On April 21, 2025, defendant obtained a telephone number connecting him to an undercover FBI employee (the "UCE") posing as an individual with connections to a Mexican cartel who could facilitate the victim's murder. Compl. ¶ 6. Between May and June 2025, defendant and the UCE engaged in several recorded telephone conversations during which they discussed the planned murder, often using coded references to baseball tickets. *Id.* ¶¶ 7–11.

During these conversations, defendant provided identifying information about the victim, including his full name, age, address, vehicle, place of employment, and time of departure from

the house, and requested that the murder take place outside the house and that the victim's body not be found. Compl. ¶ 8. Defendant and the UCE also discussed payment arrangements, including defendant's agreement to perform work for the purported "cartel" to pay off the remaining balance. *Id.* ¶¶ 8, 11. On June 20, 2025, the UCE received a $500 payment through Cash App from defendant's friend. *Id.* ¶ 12. According to the Government, this was a partial payment toward the agreed-upon murder. *Id.* Defendant was soon arrested. *See* Dkt. No. 5.

## III. LEGAL STANDARD

The purpose of a motion *in limine* is to streamline and simplify the issues at trial by ruling on the admissibility of forecasted evidence or the permissibility of anticipated lines of argument. *See, e.g.*, *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (reducing interruptions); *United States v. Wager*, 651 F. Supp. 3d 594, 598 n.1 (N.D.N.Y. 2023) (applying to anticipated lines of argument).

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Miller-Harris v. County of Onondaga*, 808 F. Supp. 3d 386, 398 (N.D.N.Y. 2025) (cleaned up). "The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Id.* Importantly, a trial court's "ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41.

## IV. DISCUSSION

The Government has moved *in limine* to: (1) preclude defendant from asserting a "diminished capacity" defense; and (2) exclude testimony from defendant's proposed expert witness and

certain evidence concerning defendant's alleged mental disorders.[1] Dkt. No. 41. Alternatively, the Government has moved for: (3) a *Daubert* hearing to determine the admissibility of the proposed expert testimony; and, if the testimony is found admissible, (4) permission to obtain its own expert witness to conduct an independent examination of defendant. *Id.* .

**A. Admissibility of Defendant's Proposed Psychiatric Evidence**

First, the Government argues that defendant's proposed expert testimony and evidence are barred by the Insanity Defense Reform Act of 1984 (the "IDRA"). Dkt. No. 41 ("Gov't Mem.") at 12–17. In the Government's view, this evidence would only be admissible to negate his intent to commit the crime. *Id*. at 14. According to the Government, "defendant's proffered testimony and evidence amount to a volitional control argument," which "is barred by the IDRA." *Id*. at 18.

Defendant responds that the Government mischaracterizes the purpose of the proposed evidence. Dkt. No. 42 ("Def.'s Opp.") at 2–4. Specifically, defendant maintains that he does not seek to introduce evidence of his mental conditions to negate the intent element of the charged offense or in service of a so-called "diminished capacity" defense. *Id.* Rather, defendant contends that the proposed testimony is relevant to a potential entrapment defense because his psychiatric conditions rendered him particularly susceptible to government inducement. *Id.* Defendant further argues that courts have consistently recognized the admissibility of psychiatric evidence for this purpose—before and after the passage of the IDRA. *Id.*

The IDRA, codified at 18 U.S.C. § 17, limits the admissibility of mental-health evidence in criminal cases in federal court. The statute provides in relevant part:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the

[1] To the extent the Government seeks to preclude defendant from asserting a diminished capacity defense, that request is granted. Defendant expressly disclaims any intention to assert that sort of defense, *see* Dkt. No. 42 at 7, 8, and the IDRA bars the use of the diminished capacity defense. *See* 18 U.S.C. § 17(a) ("Mental disease or defect does not otherwise constitute a defense.")

> offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a).

In enacting the IDRA, "Congress sought to place a number of limitations on a criminal defendant's ability to introduce mental health evidence." *United States v. Jones*, 2018 WL 1115778, at *4 (S.D.N.Y. Feb. 27, 2018) (Nathan, J.) (citation omitted). To that end, the statute (1) "eliminat[ed] . . . any form of legal excuse based on a defendant's lack of volitional control," (2) "eliminat[ed] . . . affirmative defenses such as 'diminished capacity,' 'diminished responsibility,' 'mitigation,' and 'justification,'" (3) "limit[ed] . . . the use of expert psychological testimony on ultimate legal issues," (4) "alter[ed] . . . the burden of proof to require the defendant to prove the affirmative defense of insanity by clear and convincing evidence," and (5) "creat[ed] . . . a special verdict of 'not guilty by reason of insanity,' which triggers federal civil commitment proceedings." *Id.*

Notwithstanding the IDRA, criminal defendants in federal court may offer mental-health evidence for limited purposes. For example, the IDRA does not "preclude a defendant from submitting mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime." *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006). And—as relevant here—courts have held that the statute does not categorically prohibit psychiatric evidence offered to establish a defendant's unusual susceptibility to government inducement in support of an entrapment defense. *See, e.g.*, *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655–56 (9th Cir. 2006); *United States v. Nunn*, 940 F.2d 1148, 1149 (8th Cir. 1991); *United States v. Newman*, 849 F.2d 156, 165 (5th Cir. 1988); *United States v. McLernon*, 746 F.2d 1098, 1115 (6th Cir. 1984).

"[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). To make out the affirmative defense of entrapment, "a defendant must first prove government inducement by a preponderance of the evidence. The burden then shifts to the government to show that the defendant was predisposed to commit the crime beyond a reasonable doubt." *United States v. Gagliardi*, 506 F.3d 140, 149 (2d Cir. 2007). At trial, "a jury instruction on inducement should not specify a burden of proof; it should require only 'some' or 'credible' evidence the government initiated the crime." *United States v. Cabrera*, 13 F.4th 140, 156 (2d Cir. 2021). Because the entrapment inquiry concerns, in part, a defendant's predisposition to commit the charged offense, evidence demonstrating that a defendant was unusually susceptible to persuasion may bear on that defense. *See Newman*, 849 F.2d at 165; *Sandoval-Mendoza*, 472 F.3d at 655–56.

The Government argues that defendant seeks—and has failed—to "demonstrate[ ] how his Mood Disorder, BiPolar Disorder with psychotic features, Paranoid Delusions, Hyperthyroidism, Thyroid Cancer, Alcoholism, Alcohol Abuse Disorder and related cognitive deficits, and Major Depressive Disorder establish his lack of intent that a murder be committed[.]" Dkt. No. 41 at 15. The Government further contends that "defendant's proffered evidence that his mental infirmities make him susceptible to suggestion does not relate to his 'intent in a legal sense' but is instead a 'covert[] variation of the partially diminished capacity' precluded by the IDRA." *Id.* (quoting *United States v. Pohlot*, 827 F.2d 889, 906–07 (3d Cir. 1987)).

The Court disagrees with the Government's framing of defendant's argument. As defendant explains, he does not seek to introduce evidence of his psychiatric conditions to establish that he lacked the intent necessary to commit the charged offense or that those conditions otherwise

excuse his "volitional" conduct. *See* Dkt. No. 42 at 8–10. Rather, defendant seeks to introduce such evidence to demonstrate that he was unusually susceptible to government inducement or persuasion in support of an entrapment defense. *Id.*

That distinction is important. Whereas a diminished capacity defense concerns a defendant's ability to form the requisite criminal intent or control his conduct, an entrapment defense concerns whether the Government induced a defendant who was not otherwise predisposed to commit the offense. *See Mathews*, 485 U.S. at 63. Accordingly, evidence that defendant's psychiatric conditions rendered him particularly susceptible to government inducement does not necessarily run afoul of the IDRA.

Several circuits have recognized this distinction. In *Newman*, the Fifth Circuit held that the IDRA does not categorically prohibit psychiatric testimony concerning susceptibility to inducement, reasoning that "[p]sychiatric testimony that a defendant's mental disease, defect or subnormal intelligence made him more susceptible to inducement than a normal person or rendered him incapable of forming the specific intent required as an element of the crime would not be barred by the [IDRA]." 849 F.2d at 165. Similarly, in *Sandoval-Mendoza*, the Ninth Circuit recognized that, because "medical expert opinion testimony showing that a medical condition renders a person unusually vulnerable to inducement is highly relevant to an entrapment defense," such testimony is admissible if it is adequately supported by expert medical opinion. 472 F.3d at 655–56.

The Court finds the reasoning of these courts persuasive. Evidence offered to establish that defendant was particularly susceptible to government inducement serves a purpose distinct from evidence offered to excuse criminal conduct on the basis of a mental disorder. *Cf. United*

*States v. Melhuish*, 6 F.4th 380, 396–403 (2d Cir. 2021) (recognizing distinct permissible uses of psychiatric evidence depending on the defense asserted).

Nor does the Government's reliance on *United States v. Pohlot*, 827 F.2d 889 (3d Cir. 1987), compel a different conclusion. There, the defendant, who was charged with attempting to hire a person to murder his wife, sought to introduce psychiatric evidence suggesting that his conduct reflected a "fantasy" rather than a genuine intention to arrange a murder. *Id.* at 906–07. The Third Circuit concluded that the proposed testimony did not negate the defendant's intent in the legal sense but instead advanced a "legally unacceptable theory of lack of *mens rea* that amounts covertly to a variation of the partially diminished capacity defense precluded by § 17(a)." *Id.* at 907.

Here, defendant does not contend that his psychiatric conditions prevented him from intending that a murder be committed. Rather, he seeks to establish that those psychiatric conditions rendered him unusually susceptible to government inducement. For that reason, *Pohlot* does not foreclose the use of psychiatric evidence contemplated here. To be sure, defendant may not rely on his psychiatric conditions to establish that he was incapable of controlling his conduct or otherwise should be excused from criminal responsibility. *See* 18 U.S.C. § 17(a). Nor does the Court's conclusion suggest that the proffered testimony necessarily establishes susceptibility to inducement or entitles defendant to present an entrapment defense at trial. That question is not before the Court today.

In sum, the Court declines to categorically exclude psychiatric evidence offered to establish defendant's susceptibility to government inducement in support of an entrapment defense. That said, the Court offers no opinion as to whether the defendant has sufficiently shown government inducement to support an entrapment defense. Further, the admissibility of defendant's proposed

expert testimony remains subject to the requirements of the Federal Rules of Evidence, as discussed below.

**B. Admissibility of Defendant's Proffered Expert Testimony**

Next, the Government argues that defendant's proffered evidence should be excluded under Federal Rule of Evidence 403 and that, if the Court does not preclude the noticed evidence and testimony, it should conduct a *Daubert* hearing in advance of trial. Dkt. No. 41 at 18–23. Specifically, the Government contends that the proposed psychiatric evidence would confuse and mislead the jury by inviting it to excuse defendant's conduct on the basis of his alleged mental disorders in an impermissible end-run around the IDRA's prohibition against diminished capacity defenses. *Id.* at 18–21. The Government further argues that evidence concerning defendant's physical conditions, including thyroid cancer and hyperthyroidism, would improperly elicit jury sympathy without bearing on the elements of the charged offense. *Id.* at 21. Alternatively, the Government maintains that a *Daubert* hearing is necessary to assess the reliability and relevance of the proposed expert testimony under Federal Rule of Evidence 702. *Id.* at 20–23.

Defendant responds that the proposed evidence is highly probative of his susceptibility to government inducement and that any risk of jury confusion or unfair prejudice may be addressed through appropriate limiting instructions. Dkt. No. 42 at 10–11. Defendant further maintains that evidence concerning his physical conditions will be offered only insofar as those conditions bear on his mental state and susceptibility to inducement during the relevant period. *Id.* at 11.

Although defendant's proposed psychiatric evidence is not categorically barred by the IDRA, its admissibility remains subject to the Federal Rules of Evidence. Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"All evidence introduced against a defendant, if material to an issue in the case, tends to prove guilt, but is not necessarily prejudicial in any sense that matters to the rules of evidence." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). Rather, unfair prejudice "must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Quattrone*, 441 F.3d at 186. These requirements apply with equal force to evidence bearing on a defendant's psychiatric conditions. *See Dupre*, 462 F.3d at 138–39 (affirming exclusion under Rule 403 of psychiatric evidence offered to negate specific intent).

The Court is not persuaded that defendant's proposed psychiatric evidence should be categorically excluded under Rule 403. As discussed above, evidence that defendant's mental conditions rendered him unusually susceptible to government inducement may bear on his entrapment defense. *See Sandoval-Mendoza*, 472 F.3d at 655–56. Although the Court recognizes the potential for such evidence to confuse or mislead the jury, particularly insofar as it might suggest that defendant's mental conditions excuse his conduct, those concerns do not warrant wholesale exclusion at this point. Rather, the Court may address them through appropriate limitations on the scope of the testimony and, if necessary, limiting instructions.

Nevertheless, whether the probative value of Dr. Price's particular testimony is substantially outweighed by the dangers identified in Rule 403 is not clear on the present record. Accordingly, the Court reserves ruling on the admissibility of the proposed testimony pending further disclosure, as discussed below.

Under Rule 702, a qualified expert may testify if the proponent demonstrates that the expert's specialized knowledge will assist the trier of fact, the testimony is based on sufficient facts or data, and the expert's opinions are the product of reliable principles and methods reliably applied to the facts of the case. *See* Fed. R. Evid. 702. District courts serve a "gatekeeping" function to ensure that proposed expert testimony satisfies these requirements. *Daubert* , 509 U.S. at 597 ; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending *Daubert*'s gatekeeping obligation to all expert testimony). And, as relevant here, Federal Rule of Evidence 704(b) prohibits an expert witness from stating an opinion about whether a criminal defendant possessed the mental state constituting an element of the charged offense or a defense to the charged offense. Fed. R. Evid. 704(b).

These limitations apply with equal force to psychiatric evidence offered in support of an entrapment defense. Although, as explained above, an expert may testify concerning a defendant's mental condition and its potential effect on his susceptibility to inducement, the expert "may not offer an opinion on the ultimate issues of whether the defendant was in fact induced to commit the crime or lacked predisposition." *Newman*, 849 F.2d at 165 (citing Fed. R. Evid. 704(b)).

Here, defendant has identified Dr. Price as his proposed expert witness and provided notice that Dr. Price intends to testify concerning defendant's mental health and related medical conditions, including bipolar disorder, paranoid delusions, and major depressive disorder. *See* Dkt. No. 40. Defendant further represents that Dr. Price will testify that these conditions rendered him unusually susceptible to government inducement or persuasion but will not offer opinions concerning ultimate issues prohibited by Rule 704(b). *See id.*; Dkt. No. 42 at 10.

The Court concludes that the present submissions do not provide sufficient information for the Court to determine whether Dr. Price's anticipated testimony satisfies Rule 702. Although

defendant identifies several psychiatric diagnoses, he does not describe in detail the opinions Dr. Price intends to offer, the factual bases for those opinions, or the methodology Dr. Price intends to use. Nor is it apparent what Dr. Price's anticipated opinions are based upon, beyond the fact that Dr. Price "has evaluated the defendant through a clinical psychiatric examination and reviewed the defendant's medical and mental health records." Dkt. No. 40 at 2. Without more information, the Court cannot meaningfully assess the relevance or reliability of the proposed testimony.

Moreover, the existence of a psychiatric diagnosis does not, by itself, establish that defendant was unusually susceptible to government inducement. Rather, defendant must demonstrate a reliable connection between his conditions and the susceptibility about which Dr. Price intends to testify. This inquiry is especially important given the distinction, discussed above, between evidence offered to establish susceptibility to inducement and evidence offered to excuse criminal conduct on the basis of diminished capacity. *See Newman*, 849 F.2d at 165–66.

To that end, Federal Rule of Criminal Procedure 16(b)(1)(C) further requires a defendant who has provided notice under Rule 12.2(b), upon the Government's request, to disclose a complete statement of the opinions an expert intends to offer, the bases and reasons for those opinions, and information concerning the expert's qualifications and prior testimony. *See* Fed. R. Crim. P. 16(b)(1)(C)(i), (iii). Accordingly, the Court concludes that a more particularized disclosure is warranted before ruling on the admissibility of Dr. Price's proposed testimony. Defendant shall provide a supplemental expert disclosure identifying the information required by Rule 16(b)(1)(C) to the extent not previously provided.

Following review of the supplemental disclosure, the Court will determine whether an evidentiary hearing is necessary. Although *Daubert* requires district courts to assess the reliability and relevance of proposed expert testimony as part of the court's "gatekeeping function," it does

not require a separate evidentiary hearing in every instance. *See United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007) ("While the gatekeeping function requires the district court to ascertain the reliability of [an expert witness's] methodology, it does not necessarily require that a separate hearing be held in order to do so."). Accordingly, the Government's alternative request for a *Daubert* hearing is reserved pending further submissions.

**C. The Government's Request for an Independent Examination**

Finally, the Government argues that, if the Court allows the noticed evidence and testimony at trial, the Court should permit the Government to conduct an independent examination of defendant. Dkt. No. 41 at 23–26. Defendant has indicated that he consents to such an evaluation, provided that "(i) the government is given a strict timeframe to complete the evaluation and be ready to proceed to trial within 30 days of this court's decision on the government's motion; (ii) defense counsel and Dr. Price are permitted to attend the evaluation, or, as an alternative, that the examination be audio recorded and the recording be provided to defense counsel; (iii) the government is directed to advise the defense what tests, assessments, and/or evaluations it intends to administer during the examination in advance of said exam; and (iv) the government is directed that it cannot collaterally use the information obtained during the examination." Dkt. No. 42 at 11. The Government, in reply, objects to the first three proposed conditions. Dkt. No. 43 at 8–11.

Federal Rule of Criminal Procedure 12.2(c)(1)(B) provides that, when a defendant gives notice of his intention to introduce expert evidence concerning a mental condition under Rule 12.2(b), a court "may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Fed. R. Crim. P. 12.2(c)(1)(B). The Second Circuit has recognized that a district court may order such an examination where the Government lacks an alternative, realistic means of responding to the defendant's proposed expert testimony. *See United States*

*v. McSherry*, 226 F.3d 153, 156–57 (2d Cir. 2000) (affirming district court's exercise of its inherent authority to require a defendant to submit to a psychiatric examination as a condition of presenting expert psychiatric testimony where "[there was] no realistic way for the government to address the proposed expert testimony of the defense without an examination of the defendant"); *see also Daye v. Attorney General of N.Y.*, 712 F.2d 1566, 1571 (2d Cir.1983) ("[F]ederal courts have authority under their supervisory powers to oversee the administration of criminal justice within federal courts.").

Here, defendant has provided notice of his intention to introduce psychiatric evidence concerning his susceptibility to government inducement. *See* Dkt. No. 40. Should defendant continue to pursue that evidence, the Government must have a reasonable opportunity to evaluate his alleged mental conditions and prepare for the evidence at trial. Indeed, defendant himself does not oppose an independent examination in principle. Dkt. No. 42 at 11. Accordingly, an examination is appropriate under Rule 12.2(c)(1)(B).

As to defendant's proposed conditions on the Government's independent examination, the Government objects to the first three requests. Dkt. No. 43 at 8. First, the Government opposes defendant's proposed thirty-day deadline, explaining that it must retain an expert, secure funding and travel, conduct the examination, review the findings, and prepare for trial. *Id.* Second, the Government opposes the presence of defense counsel or Dr. Price during the examination, arguing that their attendance could interfere with the examination's effectiveness and that the Fifth Amendment does not require counsel's presence. *Id.* at 9. The Government objects to audio recording for similar reasons. *Id.* at 10. Third, the Government argues that advance disclosure of particular tests and assessments could compromise the examination's integrity by permitting defendant to prepare responses and would be impracticable because the examiner may determine which tests to

administer based on defendant's responses. *Id.* at 11. As to defendant's fourth request, the Government does not oppose and acknowledges its obligations under Rule 12.2(c)(4). *Id.*

Rule 12.2(c)(1)(B) "gives the Court broad discretion to outline the conditions under which the evaluation is to be conducted." *United States v. Fell*, 372 F. Supp. 2d 753, 761 (D. Vt. 2005); *see also United States v. Johnson*, 362 F. Supp. 2d 1043, 1085–91 (N.D. Iowa 2005) (requiring advance notice of the nature of the Government's examination and audio recording of testing and interviews).

As to defendant's first request, the Court declines to impose the requested thirty-day deadline. The Court also declines to permit defense counsel or Dr. Price to attend the examination. As the Second Circuit has recognized, "the presence of a third party, such as counsel or a stenographer, at such an examination tends to destroy the effectiveness of the interview." *United States v. Baird*, 414 F.2d 700, 711 (2d Cir. 1969). Moreover, the Government has identified legitimate concerns that Dr. Price's presence could compromise the independence of the respective experts' evaluations. *See* Dkt. No. 43 at 9–10.

Although the Court declines to permit defense counsel or Dr. Price to attend the examination, it concludes that recording the examination is an appropriate safeguard. Courts have recognized that recording a psychiatric examination may adequately protect a defendant's interests without interfering with the examination. *See Fell*, 372 F. Supp. 2d at 761–62; *United States v. Sampson*, 335 F. Supp. 2d 166, 245–48 (D. Mass. 2004). Accordingly, the Government shall arrange for the examination to be audio recorded and shall provide defense counsel with a copy of the recording.

Finally, defendant requests that the Court require the Government to "advise the defense what tests, assessments, and/or evaluations it intends to administer during the examination in

advance of said exam." Dkt. No. 43 at 11. The Court declines to impose a requirement that the Government identify every test or assessment its expert intends to administer in advance of the examination. However, the Government shall provide defense counsel with one week's advance notice of the profession and identity of any expert, as well as the general assessments to be performed. *See Johnson*, 362 F. Supp. 2d at 1091 (declining to require defense counsel or a defense expert to attend examination because defendant's "Sixth Amendment right to counsel will be adequately protected by advance notice of testing and the recording of her examinations and interviews" while suggesting that "defense counsel must be informed of the 'nature and scope' of the 'mental health' proceedings."); *Sampson*, 335 F. Supp. 2d at 247 (reasoning that "[t]here [are] practical reasons to give defense counsel notice of the proposed exams, such as to better coordinate access to [defendant] between the government's experts and the defendant's experts."). This is because "[t]he overarching purpose of Rule 12.2 is to place the parties on a level playing field regarding the development of mental health evidence."). *Sampson*, 335 F. Supp. 2d at 247.

As to defendant's final request, the Court notes that Rule 12.2(c)(4) limits the Government's use of statements made by defendant during a court-ordered examination, testimony based on those statements, and evidence derived therefrom. *See* Fed. R. Crim. P. 12.2(c)(4). Any examination shall remain subject to those protections. To preserve the independence of the respective evaluations and permit the Government to prepare an appropriate examination, defendant shall provide the supplemental expert disclosure directed above before the Government's examination takes place.

In addition, the Court finds that a continuance is warranted to permit the Government to conduct its examination of defendant and afford the parties sufficient time to prepare any resulting expert testimony. Under the Speedy Trial Act, a federal criminal trial shall commence by the latest

of seventy days "after a defendant who has pled not guilty is charged, the charging document is unsealed, or the defendant makes an initial appearance." *United States v. Pikus*, 39 F.4th 39, 52 (2d Cir. 2022) (citing 18 U.S.C. § 3161(c)(1)). The Act also provides, however, "that the district court may exclude any delay resulting from a continuance granted *sua sponte* or on a motion of the parties, provided that 'the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.' *Id.* (citing 18 U.S.C. § 3161(h)(7)). When the district court orders an "ends-of-justice continuance, it must set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice are served and they outweigh other interests." *Id.* (internal quotation marks omitted) (quoting *Zedner v. United States*, 547 U.S. 489, 506 (2006)).

Here, defendant has provided notice of his intention to introduce psychiatric evidence in support of an entrapment defense, and the Court has directed defendant to provide a supplemental disclosure. The Government must have a reasonable opportunity to review that disclosure, retain an appropriate expert, and conduct an independent examination. The Court recognizes defendant's interest in a speedy trial but concludes that the time necessary to complete these proceedings is essential to the parties' effective preparation. Accordingly, the Court finds that the ends of justice served by granting a continuance outweigh the best interests of the public and defendant in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A), (B)(iv); *United States v. Sarcia*, 2026 WL 455709, at *3 (2d Cir. Feb. 18, 2026) (holding that "the need to give counsel reasonable time necessary for effective preparation" sufficiently justified an ends-of-justice continuance).

## V. CONCLUSION

Therefore, it is

ORDERED that

1. The Government's motion *in limine* (Dkt. No. 41) is **GRANTED** in part and **DENIED** in part;

2. Defendant is precluded from asserting a diminished capacity defense at trial;

3. The Government's request to categorically exclude psychiatric evidence offered in support of defendant's entrapment defense is **DENIED** without prejudice to further objection;

4. Defendant shall provide a supplemental expert disclosure consistent with Federal Rule of Criminal Procedure 16(b)(1)(C) by November 16, 2026;

5. The Government's request for a *Daubert* hearing is reserved;

6. The Government's request for an independent examination of defendant is **GRANTED**, subject to the procedures set forth in this Decision and Order.

**IT IS SO ORDERED.**

Dated: November 5, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge